**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Y.Y.B.M., Y.E.G.M., and Y.H.P.M., minors, by and through Guardian ad Litem Erica Santamaria,<br><br>Petitioners,<br><br>v.<br><br>ANGIE SALAZAR, ET AL.,<br><br>Respondents. | No. ED CV 26-5612-E<br><br>ORDER RE PETITION FOR WRIT OF HABEAS CORPUS |

**PROCEEDINGS**

Petitioners, siblings aged 13, 11, and 7, are “unaccompanied alien children” detained in the custody of the Office of Refugee Resettlement (“ORR”). On September 23, 2026, Petitioners filed a “Verified Petition for Writ of Habeas Corpus” (“the Petition”), with a declaration from Erica Santamaria (“Santamaria Decl.”) and exhibits (“Ex.”). The Petition seeks the release of Petitioners to the care and custody of their biological mother. On September 24, 2026, the Court granted Petitioners’ request to appoint Ms. Santamaria as Guardian ad Litem and request to proceed by pseudonym. On October 1, 2026, Respondents filed an Answer, with a declaration from Toby Biswas (“Biswas Decl.”). The

Answer asserts that the Petition should be denied because of outstanding issues concerning the mother's sponsorship application. On October 5, 2026, Petitioners filed a Traverse, with a supplemental declaration from Ms. Santamaria ("Santamaria Supp. Decl."). On October 14, 2026, Petitioners filed a second supplemental declaration from Ms. Santamaria ("Santamaria Second Supp. Decl.").

On October 15, 2026, the Court ordered the parties to file a joint status report. On October 26, 2026, the parties filed a report ("Status Report").

## BACKGROUND

Petitioners Y.Y.B.M., Y.E.G.M., and Y.H.P.M., sibling children who are citizens of Nicaragua, entered the United States on March 21, 2026, near Eagle Pass, Texas, where they were detained (Santamaria Decl. ¶ 11 & Ex. 1 at 1-2; Biswas Decl. ¶¶ 30, 33). Under the Homeland Security Act of 2002 ("HSA"), 6 U.S.C. § 101, et seq., the Department of Homeland Security designated Petitioners as "unaccompanied alien children," and transferred Petitioners to ORR custody on March 22, 2026 (Santamaria Decl. ¶ 11; Biswas Decl. ¶¶ 31-32). On the same day, ORR placed Petitioners at "A Greater Love Foster Family Agency" in Ontario, California—a "shelter-level program," which ORR considered to be a "least restrictive environment" (Biswas Decl. ¶ 32). Petitioners have remained in ORR custody ever since.

### A. Federal Law Governing the Placement of "Unaccompanied Alien Children"

In 2008, Congress enacted the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which established procedures designed to ensure the safe repatriation of children who are present in the United States without legal immigration status. 8 U.S.C. §

1232(a)(1), (a)(5)(D). The TVPRA requires that UACs in HHS custody be "promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A); see also 45 C.F.R. § 410.1103 (providing that ORR shall place each unaccompanied child in the least restrictive setting that is in the best interest of the child, "appropriate to the child's age and individualized needs," and consistent with interests in ensuring the child's timely appearance in immigration proceedings and protecting the child's well-being).

UACs may not be placed with any person or entity unless the HHS Secretary determines that the proposed custodian is "capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). Such determination, at a minimum, includes verifying the custodian's identity and relationship to the child, and independently finding that the individual has not engaged in any activity that would indicate a potential risk to the child. Id. A home study may be necessary before placement where, for instance, a proposed custodian (referred to as a "sponsor") "clearly presents a risk of abuse [or] maltreatment" of the child "based on all available objective evidence." 8 U.S.C. § 1232(c)(3)(B); see also 45 C.F.R. § 410.1204 (noting that home studies are discretionary in some circumstances and mandatory in others).

ORR has issued guidelines explaining its procedures for assessing sponsor suitability and the evidence a sponsor must provide for a suitability determination. See Unaccompanied Alien Children Bureau Policy Guide ("UACB Policy Guide"), https://acf.gov/orr/policy-guidance/unaccompanied-children-bureau-policy-guide (last visited October 28, 2026); see also 45 C.F.R. § 410.1200, et seq. (applicable regulations). "Category 1" cases are those where the proposed custodian/sponsor is a parent or legal guardian. See UACB Policy Guide § 2.2.1. ORR, through its case managers, conducts a suitability assessment of the potential sponsor, including a review of the "sponsor's strengths, resources, risk factors and special concerns within the context of the [UAC]'s

needs, strengths, risk factors, and relationship to the sponsor." Id. §§ 2.2.2-2.2.4, 2.3; see also 45 C.F.R. § 410.1202.

A potential sponsor must: (1) complete a sponsorship application; (2) provide identification documentation for the sponsor, the child, and any other adults living in the household or identified in a sponsor care plan; and (3) along with any adult living in their household or adult caregivers, undergo a background check. See UACB Policy Guide §§ 2.2.3, 2.2.4, 2.5; see also 45 C.F.R. § 410.1203(c) (noting sponsor applications must document sponsor identity, relationship to the child, background information on the sponsor and sponsor's household members, ability to care for the child, and include a Sponsor Care Agreement). All potential sponsors also must submit proof of address, income, sponsor-child relationship, a social security number or taxpayer identification number (or application for the same), and, if applicable, criminal history documents. UACB Policy Guide § 2.2.4. Potential sponsors must follow specific criteria, including presenting acceptable identification documents and undergoing a background check to prove their identity, submitting a DNA test to prove their relationship to the UAC, participating in interviews, and in some cases, submitting to a home study to confirm the sponsor's suitability. Id. A home study consists of interviews, a home visit, and a written report containing a case worker's findings. Id. § 2.4.2.

After receipt of the required information concerning the potential sponsor, the case manager and case coordinator make release recommendations to ORR. UACB Policy Guide §§ 2.3, 2.7. ORR, through a field specialist, then makes a decision. Id. There are five possible decisions: approving release to sponsor, approving release with post-release services, conducting a home study before a final release decision, denying release, or remanding for further information. Id. § 2.7.

"Absent complicating factors," ORR adjudications on Category 1 sponsor applications are to be completed within ten calendar days of receipt. See UACB Policy Guide § 2.7; see

also 45 C.F.R. § 410.1205(b) (providing that ORR shall adjudicate a completed sponsor application of a parent or legal guardian within ten calendar days of receipt, "absent an unexpected delay," such as when a case requires completion of a home study). There is no precise time limit for ORR adjudication of a sponsorship application where a home study is required. See 45 C.F.R. § 410.1205. However, ORR supervisory staff are required formally to review pending sponsorship applications every 90 days, counting from the date a child comes into ORR custody, and to "resolve in a timely manner the reasons that a sponsor application remains pending and to determine possible steps to accelerate the unaccompanied child's safe release." 45 C.F.R. § 1207; see also UACB Policy Guide § 2.7.9. If release is denied, a prescribed administrative appeals process can then ensue. UACB Policy Guide § 2.7.8; see also 45 C.F.R. § 410.1206.

### B. Petitioners' Sponsorship Suitability Adjudication Process

As detailed below, the parties now appear to agree that Petitioners' mother has complied with most if not all of the foregoing requirements.[1] ORR has yet to issue a release decision.

On March 23, 2026, ORR identified Petitioners' mother as their intended "Category 1" sponsor for reunification (Santamaria Decl. ¶ 12; Biswas Decl. ¶ 34). The next day, Petitioners' mother was in contact with ORR and began the process to obtain the release of her children (Petition ¶ 23; Ex. 1 at 1; Biswas Decl. ¶ 38). In March of 2026, Petitioners' mother submitted her identification documents, social security number, and an Authorization for Release of Information for her background check (Santamaria Decl. ¶ 13; Biswas Decl.

---

[1] The parties have not submitted certain documents that are the subject of some of the findings herein. The Court has assumed that the allegations in the parties' declarations regarding the contents of the absent documents are accurate to the extent no party has expressed disagreement with those allegations.

¶¶ 38, 40). In April of 2026, ORR verified Petitioners' mother's birth certificate (Biswas Decl. ¶ 42).

Respondents allege that, on April 13, 2026, Petitioners' mother contacted the assigned ORR case manager to report that, on April 9, 2026, she had been involved in a domestic dispute with her partner (referred to as "ACG," an alternative caregiver), resulting in the mother's temporary relocation to a friend's home (Biswas Decl. ¶ 41). The mother reportedly stated that she had submitted housing applications and would provide her address once she secured an apartment (Biswas Decl. ¶ 41). On April 20, 2026, Petitioners' mother reportedly stated that she would be moving back into her apartment on May 9, 2026, without ACG (Biswas Decl. ¶ 43). However, by the time her portion of the sponsorship application was completed later that month (Ex. 1 at 2; Biswas Decl. ¶¶ 45-47), Petitioners' mother reportedly again was living with ACG (Santamaria Decl. ¶ 14; Biswas Decl. ¶ 47).

On May 19, 2026, a field specialist reviewed the mother's completed portion of the sponsorship application (Ex. 1 at 2; Biswas Decl. ¶ 45). On or about May 28, 2026, the specialist reopened the sponsorship application because it was missing or had incorrect information (Ex. 1 at 2; Biswas Decl. ¶ 46). On June 2, 2026, the specialist contacted Petitioners' mother to review the application and informed her that ACG must complete an Authorization for Release of Information, which ACG provided on June 3, 2026 (Biswas Decl. ¶¶ 47-48). On June 3, 2026, Petitioners' mother and ACG completed fingerprinting (Santamaria Decl. ¶ 14; Biswas Decl. ¶ 48). According to Respondents, the mother's fingerprint result "appears clear," but ACG's result required further investigation due to a criminal history (Biswas Decl. ¶ 48).

On June 8, 2026, the field specialist requested background checks for Petitioners' mother and for ACG (Biswas Decl. ¶ 49). On June 10, 2026, the check for Petitioners'

mother came back as "appears clear" (Biswas Decl. ¶ 50). During a June 12, 2026 assessment interview, ACG reportedly conceded a criminal history including a 2023 conviction from a "domestic violence incident with a different partner (not involving children)," and the April, 2026 incident which Child Protective Services had investigated (Petition ¶ 25; Santamaria Decl. ¶ 15; Biswas Decl. ¶ 51). According to Respondents, Petitioners' mother disclosed that the ACG's April, 2026 arrest resulted from a false report Petitioners' mother had made (Biswas Decl. ¶ 51). According to Petitioners, the mother claimed that a panic attack brought on by postpartum depression preceded the false report (Petition ¶ 25). Based on the disclosures, the field specialist and/or ORR required ACG's police and court records, a "Sponsor Risk" home study, child abuse and neglect checks, an in-person identification check, and a "Division of Vetting" summary (Santamaria Decl. ¶ 15; Biswas Decl. ¶¶ 51-53, 57-58). As set forth below, Petitioners' mother and ACG reportedly satisfied each requirement to the extent it was within their power to do so (Santamaria Decl. ¶ 15).

Specifically, Petitioners' mother and ACG provided police and court records on June 18, 2026, proof of income on June 22, 2026, and a Domestic Violence Safety Plan on June 29, 2026 (Santamaria Decl. ¶ 15; see also Biswas Decl. ¶ 52 (acknowledging receipt of court/police records)). Court/police records reportedly showed that charges from the April, 2026 domestic dispute were dismissed (Biswas Decl. ¶52). The charges had been assault with a deadly weapon or with force likely to produce great bodily injury, child endangerment and threats of violence (Biswas Decl. ¶ 58). Records also showed that ACG had completed service of the sentence for the 2023 conviction (Biswas Decl. ¶ 52.

A home study was completed on July 8, 2026, recommending against placement based on the absence of suitable bedding and insufficient space for the children in their mother's home. See Santamaria Decl. ¶¶ 16-17 (noting a copy of the study had "additional content not previously identified," without specifying that content); compare Biswas Decl. ¶¶

54-56 (reporting the study found concerns regarding the home's physical environment but also that, at the time of the home study, "it appeared to the Home Study Case Worker that the Child Protective Services Case stemming from the April 2026 incident remained open"). ORR requested child abuse and neglect checks that day (Biswas Decl. ¶ 57).

Respondents report that, on July 13, 2026, a Division of Vetting report "came back as 'not clear,'" assertedly due in part to ACG's criminal history, including the April, 2026 arrest and charges (which as indicated above, had been dismissed by then), ACG's disclosure that there was a restraining order against him from his ex-partner and their minor child because of a charge and arrest for battery against a spouse or former intimate partner, and the concerns regarding the home's physical environment raised in the home study (Biswas Decl. ¶ 58).

Petitioners' mother provided ORR with proof of installation of bunk beds and a screen on July 22, 2026 (Santamaria Decl. ¶ 16; Biswas Decl. ¶ 60). According to Respondents, Petitioners' mother also provided a Child Protective Services report on July 22, 2026, regarding the April, 2026 domestic dispute which indicated the dispute was "unfounded," as well as evidence that ACG had completed a 26-week "STOP – Batterers Intervention Prevention" program (Biswas Decl. ¶ 60; see also Traverse, p. 16 (mentioning this evidence)).

On July 29, 2026, ACG's child abuse/neglect check results returned "clear" (Santamaria Decl. ¶ 19; Biswas Decl. ¶ 62). Petitioners' mother provided DNA and in-person identification verification on July 14 or 24, 2026 (Santamaria Decl. ¶ 18; Biswas Decl. ¶ 59). DNA results were uploaded to the ORR portal on August 7, 2026, which confirmed the mother's biological relationship to Petitioners (Santamaria Decl. ¶ 18; Biswas Decl. ¶ 61).

///

According to Petitioners' mother, as of August 12, 2026, the only items outstanding on Petitioners' case report were: (1) her child abuse/neglect check results, which the State of California had not returned; (2) ACG's taxpayer identification number application, which the Internal Revenue Service had advised ACG he could not yet file; (3) submission of a Category 1 identification document exemption; and (4) mitigation of the prior home study recommendation (Santamaria Decl. ¶ 20). Petitioners' mother reportedly made a request for taxpayer identification number waiver for ACG on August 16, 2026 (Santamaria Decl. ¶ 21).[2] Respondents, however, report that the field specialist continued to contact Petitioners' mother concerning the status of ACG's taxpayer identification number request in August and September. See Biswas Decl. ¶¶ 63-67 (reporting that the specialist asked Petitioners' mother to provide written evidence that ACG was not eligible to apply for a tax identification number as reported, which she supposedly had not been able to provide).

On August 20, 2026, Petitioners' counsel e-mailed a letter to ORR Acting Director Angie Salazar, demanding a final decision on the Family Reunification Plan or immediate release of Petitioners to their mother (Santamaria Decl. ¶ 22; Ex. 2). The ORR never responded to this letter (Santamaria Decl. ¶ 22).

On September 22, 2026, Petitioners' statutorily-appointed child advocate (see 8 U.S.C. § 1232(c)(6)), sent a letter to the field specialist recommending reunification with Petitioners' mother (Ex. 1). The letter, which does not mention ACG, argues that the existence or nonexistence of a taxpayer identification number "has no bearing on the best interests of the child" (Ex. 1 at 3).

///

///

---

[2] ORR may grant a waiver for the taxpayer identification requirement "when supported by clear justification, absent child safety concerns, and in consideration of the totality of the circumstances." UACB Policy Guide § 2.7.4.

Respondents assert that, as of October 1, 2026, the following documents remained outstanding: (1) ACG's taxpayer identification application or proof of inability to apply for a number, or submission of a Category 1 waiver based on ACG not having a taxpayer identification number; (2) a declaration of financial support from ACG because Petitioners' mother assertedly is dependent on his income; (3) a home study addendum (Biswas Decl. ¶¶ 68-69). Respondents state: "Upon receipt of the remaining supporting documentation and completion of the remaining vetting steps, if the sponsor has not already obtained her [sic] [tax identification number], a waiver for this requirement will be requested on her behalf. Following adjudication of this request, ORR will <u>promptly complete its sponsor suitability determination and release decision.</u>" <u>See</u> Biswas Decl. ¶ 70 (emphasis added).

Regarding enumerated item (1) above, Petitioners' mother alleges she requested a waiver on August 16, 2026, and it is the ORR that has failed to grant a tax identification waiver for ACG (Traverse, p. 1). Regarding item (2), the mother alleges she provided the requested financial support declaration on October 2, 2026, and subsequently provided requested bank statements (<u>id.</u>; Santamaria Supp. Decl. ¶¶ 6, 8). Regarding item (3), the mother alleges that, if ORR thought a "home study addendum" was required, ORR could have performed a study at any time after July 22, 2026, when she provided proof of mitigation of issues raised in the original home study (Traverse, p. 1).

Since the filing of the Traverse, ORR completed a supplemental home study on October 8, 2026, resulting in a "positive" recommendation of Petitioners' reunification with their mother (Santamaria Second Supp. Decl. ¶ 3 & Ex. A; Status Report, p. 3). A new field specialist submitted a Category 1 exemption regarding ACG's tax identification number on October 9, 2026 (Santamaria Second Supp. Decl. ¶ 4 & Ex. A; Status Report, p. 6). As of October 13, 2026, Petitioners' ORR case manager was attempting to reunify Petitioners with their mother (Santamaria Second Supp. Decl. ¶ 3 & Ex. A).

///

As of October 26, 2026—seventeen days after the field specialist submitted a taxpayer identification waiver request on October 9, 2026—no decision has issued (Status Report, p. 2). Such delay has continued, notwithstanding Respondents' previous declaration stating that (1) a waiver of ACG's taxpayer identification requirement would be requested only after the documentation/vetting was complete, and (2) ORR would adjudicate the waiver request and then "promptly complete" its sponsor suitability determination and release decision (Biswas Decl. ¶ 70). ORR reportedly rejected the October 9, 2026 waiver request on October 13, 2026, because "proof of [a taxpayer identification number] application was pending" (Status Report, p. 6; see also Biswas Decl. ¶ 69(a) (requesting proof of an application for a taxpayer identification number or inability to apply)). ORR received additional documentation from ACG on October 16, 2026, showing that he had self-applied for a taxpayer identification number (Status Report, pp. 2, 7). As of October 26, 2026—ten days later—ORR was "still processing" the application for a waiver of the taxpayer identification (id.).

Furthermore, ORR now states that it is "still reviewing information received on the domestic violence history and child welfare concerns that were raised in the sponsorship application process" (Status Report, pp. 3-5; see also id., p. 7 (stating that approval of the taxpayer identification number waiver, "although relevant, is not the only, or even paramount, issue that ORR is considering to make an assessment of the suitability of the sponsor and the decision to release")). Petitioners contend that any child welfare concerns were resolved months ago, and Respondents have not explained their "months-long" failure to issue a release decision or give any time frame for doing so (Status Report, p. 3).

The continuing delay assertedly has been profoundly injurious to Petitioners. Petitioners allege that, while in custody, they were placed with a "resource home" from which Petitioners had to be removed and placed in another home due to "serious safety and emotional concerns" (Santamaria Decl. ¶ 24). Each child reportedly has suffered emotional

and psychological harm during their detention (Santamaria Decl. ¶¶ 25-28; Ex. 1 at 4). Petitioners assert that their continued detention is "inflicting debilitating injury" on them (Status Report, p. 3).

**PETITIONERS' CONTENTIONS**

Petitioners assert three claims for habeas relief: (1) Petitioners' detention violates the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232; (2) Petitioners' detention violates their right to procedural due process under the Fifth Amendment; and (3) Petitioners' detention violates their right to substantive due process under the Fifth Amendment. See Petition ¶¶ 54-91.

Respondents argue that: (1) the Petition is untimely because Petitioners' sponsorship application is pending, Petitioners should be required to exhaust their administrative remedies, and any separate TVPRA claim otherwise fails; (2) ORR custody is required by statute until ORR can make a determination that the proposed custodian is capable of providing for Petitioners' physical and mental well-being; and (3) nothing regarding the ORR's continued care for the children violates Due Process. See Answer, pp. 22-30.

**DISCUSSION**

The federal Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A petitioner held in custody in violation of the Constitution or federal law is entitled to habeas relief. See 28 U.S.C. § 2241(c)(3). "It is the petitioner's burden to prove his custody is in violation of the

Constitution, laws or treaties of the United States." Snook v. Wood, 89 F.3d 605, 609 (9th Cir. 1996) (citation omitted). On the circumstances presented, Petitioners have shown that continued detention without a final decision on the sponsorship application beyond the deadline now set by the Court will violate due process.

**A. Further Administrative Exhaustion Prior to the Court's Consideration of the Due Process Issues Herein is Not Required.**

Respondents argue that the Court should require Petitioners to exhaust administrative remedies because "important vetting requirements to ensure Petitioners' safety and well-being upon release have not been completed" (Answer, p. 22). Respondents acknowledge that there is no statutory exhaustion requirement in 28 U.S.C § 2241 (Id.). While the exhaustion requirement "is prudential, rather than jurisdictional, for habeas claims" such that a court may waive the requirement, courts may require exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)). Waiver of the exhaustion requirement is appropriate if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted).

The current record suggests that vetting is complete. On October 9, 2026, the ORR's field specialist submitted a taxpayer identification waiver, which ORR previously indicated would denote having received the outstanding documentation and the completion of remaining vetting (Biswas Decl. ¶ 70; Status Report, p. 6). In any event, the Court is disinclined to require additional pre-decision administrative exhaustion in this case because the Hernandez factors do not justify requiring such exhaustion. Hernandez, 872 F.3d at 988.

First, ORR's expertise in reviewing sponsorship applications is not necessary to decide whether Petitioners' constitutional rights will be violated if delay continues. See Hernandez, 872 F.3d at 989 (finding district court correctly waived prudential exhaustion because exhaustion was not necessary "to resolve the purely legal questions" raised by due process claim). Moreover, extensive vetting has been done in this case—Petitioners' child advocate recommended reunification, a second home study was completed which also recommended reunification, and the ORR case manager is attempting reunification. Second, Petitioners have sought judicial intervention only after significant delays in the administrative process. Relaxation of the exhaustion requirement under the present circumstances would not "encourage" "deliberate bypass." Third, "[w]here the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the [agencies] to possibly correct an error." Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026). ORR ordinarily should issue a placement decision within ten days of the completed Category 1 sponsorship application. 45 C.F.R. § 410.1205(b). Although the application of Petitioners' mother appears to have been completed along with additional related vetting, at the latest, by October 9, 2026, it further appears that a final placement decision may well not issue in the near future without intervention from the Court. Respondents' portion of the Status Report does not give the Court any confidence that a prompt decision is forthcoming. The Court will excuse any

///

requirement further to exhaust pre-final decision procedures in this case.[3] Laing, 370 F.3d at 1000.

**B. Petitioners' Continued Detention Without a Prompt Final Decision on the Sponsorship Application Will Violate Procedural Due Process.**

Petitioners argue that their continued detention without a decision on their sponsorship application violates their procedural due process rights because they are being held without any effective means to challenge their detention (Petition ¶¶ 59-68, 80-85; Traverse, pp. 13-17). Respondents assert that ORR is acting according to the TVPRA's requirements by vetting the sponsorship application, and the circumstances of this case do not suggest that the children's protected liberty interests outweigh the government's responsibility under the TVPRA to make a considered placement decision in the children's best interests (Answer, pp. 23-27).

Constitutional due process, which extends to noncitizens present in the United States, prohibits deprivations of life, liberty and property without due process of law. See U.S. Const. Amend. V; Trump v. J.G.G., 604 U.S. 670, 673 (2025); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent."). The parties agree that, when determining the procedures due process requires (and whether a due process violation exists), courts apply a balancing test outlined in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), weighing : (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional

[3] If the final decision is a denial of release, Petitioners may well be required to pursue an administrative appeal rather than to seek further relief from the Court. The Court need not and does not decide this potential issue at the present time.

or substitute procedural requirement would entail." Id.; see also Petition ¶¶ 59-68; Answer, pp. 24-27 (arguing same). Here, the Court finds that an application of these factors, on balance, weighs in Petitioners' favor.

**1. The Private Interest**

Petitioners invoke private interests in family unity and freedom from detention (Petition ¶ 60). Respondents do not dispute that Petitioners have these protected liberty interests. Respondents argue that Petitioners' interests do not outweigh the remaining Mathews factors (Answer, p. 25).

The Court finds, as other district courts have found, that children in ORR custody have a substantial liberty interest in freedom from detention. See e.g., A.H.C.D.L.C. v. Federal Field Specialist, 2026 WL 2997706, at *6 (C.D. Cal. Oct. 5, 2026); I.R.L.M. v. Salazar, 2026 WL 2597933, at *7-8 (C.D. Cal. Sept. 2, 2026); M.A. v. Molina, 2026 WL 741623, at *3 (N.D. Ohio Mar. 17, 2026); A.N.P.S. v. Salazar, 2025 WL 3707333, at * 4 (N.D. Ill. Dec. 22, 2025); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1195-96 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018), J.E.C.M. v. Lloyd, 352 F. Supp. 3d 585, 585 (E.D. Va. 2018). The children in this case have been detained for seven months with no clear indication of when ORR will decide the sponsorship application.

Respondents point out that children "unlike adults, are always in some form of custody" and do not have "a right to come and go at will." See Answer, p. 25 (citing Reno v. Flores, 507 U.S. 292, 302 (1993) ("Flores") (quoting Schall v. Martin, 467 U.S. 253, 265 (1984)). Any reliance on Flores to diminish the liberty interest in this case is misplaced. See, e.g., I.R.L.M., 2026 WL 2597933, at *7 (rejecting argument that UACs do not have a liberty interest in being free from detention based on Flores) ; M.A., 2026 WL 741623, at *3

(same); Saravia, 280 F. Supp. 3d at 1195 (same; observing that children nonetheless "retain a strong interest in being free from unnecessary government interference with their liberty"). Flores concerned UACs who were detained for the first time and did not have a readily available parent, close relative, or legal guardian to take custody of them. Flores, 507 U.S. at 302. Although Petitioners were detained for the first time, their mother is readily available to take custody of them.

The Court also finds, as other district courts have found, that Petitioners have a substantial due process interest in family integrity or unity that is implicated when a child in ORR custody seeks family reunification with a sponsor. See, e.g., A.H.C.D.L.C., 2026 WL 2997706, at *7; I.R.L.M., 2026 WL 2597933, at *8; M.A., 2026 WL 741623, at *4-5; J.E.C.M., 352 F. Supp. 3d at 585; Santos v. Smith, 260 F. Supp. 3d 598, 610-11 (W.D. Va. 2017); Beltran v. Cardall, 222 F. Supp. 3d 476, 482 (E.D. Va. 2016); see also Lucas R. v. Becerra, 2022 WL 2177454, at *25 (C.D. Cal. Mar. 11, 2022) ("Class Members whose potential sponsors are family members also have a strong interest in familial association. This interest is strongest for minors with Category 1 parent/guardian sponsors."). Petitioners are asserting their due process rights to family integrity/unity to allow for reunification with their mother, which they and their child advocate maintain is the least restrictive setting in their best interests, and which their case manager is seeking, after being separated from any family for seven months under difficult conditions.

Respondents argue that "a parent's interest in raising their child is 'neither absolute nor unqualified,'" and "must give way to the state's responsibility to investigate circumstances that could lead to neglect and abuse, as required by the TVPRA for ORR." See Answer at 25 (quoting Martin v. St. Mary's Dep't of Soc. Servs., 346 F.3d 502, 506 (4th Cir. 2003)); see also 8 U.S.C. § 1232(c)(3)(A) (TVPRA's provision prohibiting the ORR from releasing a child to a sponsor unless the ORR determines the proposed custodian is capable of providing for the child's physical and mental well-being)). Although there

admittedly are competing interests, there is little doubt that the ORR's continued detention of the children away from their mother for seven months is significantly encroaching upon Petitioners' right to family unity. See, e.g., A.H.C.D.L.C., 2026 WL 2997706, at *7 (finding encroachment where family had been separated for more than four months); Maldonado v. Lloyd, 2018 WL 2089348, at *7 (S.D.N.Y. May 4, 2018) (observing where child and mother had been separated for more than eleven months that respondents encroached upon the right to family integrity "considerably"); Beltran, 222 F. Supp. 3d at 482 (noting that the "forced separation of parent from child, even for a short time, represents a serious impingement" on the right to family integrity) (quoting Jordan by Jordan v. Jackson, 15 F.3d 333, 345 (4th Cir. 1994)).

The Court has concluded that the first Mathews factor weighs in Petitioners' favor under the circumstances presented.

**2. Risk of Erroneous Deprivation**

Petitioners argue that the risk of an erroneous deprivation of their interests in liberty and family integrity is "immense," as Respondents' procedures have allowed Petitioners to remain in ORR's custody for months without a sponsorship determination, and prevented Petitioners from appealing or challenging any such determination (Petition ¶ 63; Traverse at 15-16.) In considering this factor, the Court looks to whether "the existing agency procedures sufficiently protected [Petitioners'] liberty interest[s] and mitigated the risk of erroneous deprivation." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1209 (9th Cir. 2022); see also, e.g., Maldonado, 2018 WL 2089348, at *7 ("With respect to the second Mathews factor, it is appropriate to review the process that has been provided to Petitioners so far.").

Here, Petitioners were transferred to ORR custody on March 22, 2026. The next day, their mother was identified as a potential Category 1 sponsor. Since March 26, 2026,

Petitioners' mother has been cooperating with ORR to obtain the release of her children. Petitioners' mother appears to have satisfied all requests for ORR to determine her current sponsorship suitability. She submitted a completed sponsorship application and provided identification documents which were verified, submitted her social security or taxpayer identification number, fingerprints, a DNA sample establishing her relationship with the children, proof of income/a declaration of financial support, and other information requested for her background check, as well as proof of steps she took to address issues raised by the home study. ACG provided his identification documents, proof of income, and other information requested for his background check, as well as an application for a taxpayer identification number.

The ORR's field specialist submitted a taxpayer identification waiver on October 9, 2026, which Respondents indicated would be done only after receipt of remaining documentation and completion of remaining vetting steps (Biswas Decl. ¶ 70; Status Report, p. 6). Respondents also state that a Division of Vetting report packet is completed "[o]nce all documents are submitted and the evaluations/investigations are done," and that the ORR received the results of the Division of Vetting report in this case on July 13, 2026 (Biswas Decl. ¶¶ 37, 58). Although the report allegedly was "not clear" based in part on ACG's criminal history, the April, 2026 domestic violence charges, and the home study findings (Biswas Decl. ¶ 58), it does not appear that ORR will be truly unable to make an informed release decision in the very near future (even if, arguendo, ORR was truly unable to do so in the recent past). Respondents admit that ORR received child abuse/neglect check results for ACG which were "clear" on July 29, 2026 (Biswas Decl. ¶ 62). Respondents also admit that they received on July 22, 2026, a child protective services report indicating the April, 2026 domestic incident was "unfounded," and photographs of home arrangements Petitioners' mother made to accommodate the children based on concerns raised in the home study (Biswas Decl. ¶ 60). Indeed, ORR's latest home study reportedly recommended reunification, Petitioners' child advocate recommended reunification, and, as

of October 13, 2026, Petitioners' ORR case manager was seeking reunification (Ex. 1; Santamaria Second Supp. Decl. ¶ 3 & Ex. A). Any concerns reportedly raised by the Division of Vetting report appear to have been addressed. As noted above, ORR ordinarily should issue a placement decision within ten days of the completed Category 1 sponsorship application. 45 C.F.R. § 410.1205(b). The application of Petitioners' mother appears to have been completed along with all additional, related vetting no later than October 9, 2026. The regulations do not impose a precise time limit for issuing a decision where, as here, a case required completion of a home study. Id. However, even now, the parties' Status Report does not suggest that a decision is forthcoming. Petitioners have no administrative mechanism to force a prompt decision.

Respondents argue that Petitioners' due process rights are adequately protected by ORR's administrative review process, as discussed in Lucas R. v. Becerra, 2022 WL 2177454, at *26. (Answer at 26-27). Lucas R. was a class action challenging ORR policies and practices relating to the care and custody of UACs, including a class for whom the ORR refused to release to parents within 30 days of a proposed custodian's family reunification packet on the grounds that the proposed custodian is or may be unfit. Lucas R., 2022 WL 2177454, at *2. The district court found that, for sponsorship denials, "hearing policies provide the fundamental hallmarks of due process, including review by a neutral factfinder who is not involved in the original denial." Id. at *26. The court, however, agreed with other district courts that "'significant' and 'unexplained delays in responding to [a proposed sponsor's] unification request' violate due process irrespective of other procedural defects." Id. at *27 (quoting Santos, 260 F. Supp. 3d at 613-14); see also I.R.L.M., 2026 WL 2597933, at *10 (collecting cases). The court found ORR's existing timeframes of processing a Category 1 sponsorship packet within ten calendar days was "for the most part" sufficient. Id. The court imposed the 90-day deadline now in existence at UACB Policy Guide § 2.7.9, requiring consultation with ORR supervisory staff every 90 days to reduce the risk of prolonged detention and "determine what steps are needed to accelerate the minor's safe

release." Id. at 28. The court noted that "in individual cases of egregious delay, minors retain the option to seek judicial review of their continued detention." Id. Respondents' reliance on Lucas R. is unconvincing. Here, no decision has yet been issued which can be appealed, Petitioners' sponsorship application was not processed within ten calendar days, there is no evidence that ORR has conducted reviews every 90 days as required, and Petitioners have been detained more than seven months.

Respondents generally argue that the delay in processing the mothers' sponsorship application is not unreasonable, considering the potential exploitation of UACs by sponsors and the ORR's obligation to ensure the safe release of children in its care (Answer at 27). Respondents assert that the record "demonstrates that ORR has engaged with [Petitioners' mother] regarding additional required information for sponsoring [Petitioners] and other necessary steps" (id.). The Court recognizes that some of the delays in reviewing the sponsorship application this case are attributable to Petitioners' mother—i.e., (1) the delay in her not finalizing her sponsorship application until late May, 2026, the subsequent need for a home study based on domestic violence/housing issues Petitioners' mother reported, (2) the time she required to address issues identified by the home study and ACG's background check, and (3) the time she required to request a waiver of ACG's tax identification number requirement. At the present, the delays in this case attributable solely to the ORR arguably comprise only approximately two months. However, without any suggestion from Respondents that a decision is forthcoming, it appears that the continuing delay will be unreasonable, as the prolonged separation of Petitioners from their mother reportedly continues to cause them extreme emotional distress. Compare Beltran, 222 F. Supp. 3d at 486 (finding likely no due process violation based on "delay alone" when only two months had passed between application submission and denial; the application in Beltran was no longer pending).

///

///

In any event, Respondents have not sufficiently explained ORR's continued delay in determining whether Petitioners' mother is a suitable sponsor for purposes of meeting the statutory, regulatory, and procedural requirements. Respondents generally assert, with no projected timeline, that "ORR. . . is still reviewing information received on the domestic violence history and child welfare concerns that were raised in the sponsor application process," and "all documents and relevant and available information are being reviewed to make an assessment of the suitability of the sponsor and the decision to release." See Status Report, pp. 3, 5. Respondents have provided insufficient documentation with their filings. Compare E.H.C.F. v. Kennedy, 2026 WL 145229, at *12 (D. Conn. Jan. 16, 2026) (where four months had passed since safety concerns were raised, finding "[ORR's] vague explanation as to the delay—that additional vetting is required and that an 'investigation' as to safety concerns needs to be completed—does not comport with basic procedural due process."). The available record suggests that, more than ten days ago, all of the required information was provided to the ORR, the home study addendum had recommended reunification, Petitioners' child advocate had recommended reunification arguing that the existence of a taxpayer identification number or lack thereof has no bearing on the best interests of the children, and Petitioners' case manager was attempting to reunify Petitioners with their mother. Given the risk of erroneous deprivation of Petitioners' protected rights in this case, where no sponsorship decision has been made that could be appealed or challenged, and no timeline has been provided for the issuance of such a decision, the Court finds that the second Mathews factor also weighs in Petitioners' favor.

**3. The Government's Interest**

Regarding the third Mathews factor, Petitioners do not dispute that Respondents "have a substantial and legitimate interest in child safety and in vetting sponsors." See Petition ¶ 67; Traverse at 16; see also Petition ¶ 75 (recognizing that the TVPRA mandates that UACs in HHS custody may not be placed with sponsors capable of caring for the child's

physical and mental well-being absent an independent finding that the sponsor does not pose a risk to the child, citing 8 U.S.C. § 1232(c)(3)(A)). Petitioners argue that Respondents have "failed to identify a particularized safety, welfare, flight, fiscal, or administrative reason" for their continued custody, to explain why ORR has not made a decision (Petition ¶ 67; Traverse, pp. 16-17).

The record in this case suggests that the ORR initially had ample reason to perform a home study and to require additional evidence, given ACG's criminal background and prior involvement with child protective services. ACG's child abuse/neglect check came back clear in July. There has been extensive vetting in this case, including two home studies, the child advocate's recommendation, and case manager's attempts to reunify Petitioners with their mother. There is no persuasive proof on the present record that any further vetting that cannot be accomplished by the deadline now set by the Court is necessary to ensure the children's safety. On the available record (which is constrained given the parties' reliance on representations in the absence of documentary evidence), the Court finds that the third Mathews factor does not weigh significantly in Respondents' favor.

**CONCLUSION**

For the foregoing reasons, the Court finds that, on balance, application of the Matthews factors warrants the conclusion that significant further delay in issuing a final decision will violate Petitioners' due process rights. Accordingly, Petitioners are granted a conditional writ of habeas corpus. If ORR fails to issue a final decision[4] on the sponsorship

///

///

///

---

[4] As used herein, "final decision" means a decision: (a) approving release; (b) approving release with post-release services; or (c) denying release.

application of Petitioners' mother on or before November 16, 2026, then Respondents shall release Petitioners to the custody and care of their mother on that date.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 30, 2026

CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[5] Petitioners have failed to justify any additional or different form of habeas relief.